## Goff v. Henry Goff & Co.'s Assignee.
(Decided Jan. 29, 1935.)

520

L. J. MAY for appellant.

J. J. MOORE for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Henry Goff and Grace Goff, husband and wife, in October, 1929, were engaged in the mercantile business

at Penny and Yeager, Ky.  S. D. Johnson was a clerk in the store at Penny and had been in charge of it for almost three years.  On September 5, 1929, the Goffs, with the assistance of Johnson, invoiced their merchandise at Penny and made a record of it as the invoice progressed.  Its inventory value was $8,191.90. They continued the business until the 10th day of October, 1929, when Johnson purchased a one-third interest in the stock of merchandise for $1,900, $400 of which was paid for in labor theretofore performed as clerk and $1,500 evidenced by Johnson's note to Henry Goff.  Between the date of the taking of the September inventory and the sale in October of one-third interest to Johnson, merchandise had been sold in the regular course of business, in the sum of $2,500.  In the sale of a one-third interest to Johnson, they claim, this $2,500 was deducted from the $8,191.90 (the September inventory), leaving $5,691, the agreed value placed on the merchandise by the Goffs and Johnson at the time Johnson purchased the one-third interest.  Henry Goff and Johnson claim that at the time Johnson purchased the one-third interest, there were no debts against the same, and it was agreed that if there were any against the merchandise, the Goffs, individually, were to pay or satisfy them.  Soon thereafter, the merchandise was moved from Penny to Pikeville, Ky.  After it was moved to Pikeville, the business was conducted in the name of Henry Goff & Co.  The firm incorporated on the 28th day of October 1929.  The authorized capital was $8,000.  Henry Goff subscribed for 28 shares, Grace Goff for 26, and Johnson for 26 of the par value of $100 per share.  On February 25, 1930, 20 shares were issued to Johnson, 19 to Henry Goff, and one to Grace Goff, totaling 40 shares.  The record of the corporation shows that the stock of goods on hand was put into the corporation at a value of $4,000.  On another occasion, 9 shares of stock were issued to Henry Goff, 6 to Johnson, and 25 to Grace Goff.  Henry Goff and Johnson declare that the 9 shares were issued to Henry Goff in consideration of services rendered by him to the corporation and that 19 shares were issued to Johnson for one-third interest in the stock of merchandise and 25 shares issued to Grace Goff in consideration of her one-third interest in the merchandise and profits.

Henry Goff and Johnson, in January, 1931, again invoiced the merchandise, and by the inventory the total value of merchandise on hand at that time was $5,--

776.13. They claim that in making this inventory the goods were invoiced at 35 per cent. below the cost price and that the $5,776.13 represented about 65 per cent. of the cost price of the goods, the actual cost price thereof was $10,000.

No board of directors was elected. The stockholders assumed and exercised the authority of the board of directors. After the corporation was organized, Johnson assumed the actual control of the business and merchandise of Goff & Co. at an agreed salary of $125 per month. He and the Goffs claim that the corporation agreed to pay Henry Goff a salary of $75 per month; he gave about one-half of his time to the business of the corporation for a period of more than twelve months; the corporation owed him under this arrangement for services $900, and for which the 9 shares of stock were issued and delivered.

In August, 1931, the corporation executed and delivered under section 74, Kentucky Statutes, a deed of assignment to K. J. Day, who accepted the trust and endeavored to carry it out. He instituted this action against Henry Goff, wherein he set out that the authorized capital stock of the corporation was $8,000, divided into 80 shares of $100 each; 28 shares of the par value of $2,800 had been issued to Henry Goff, 26 shares to Grace Goff, and 26 shares to Johnson. He averred that Henry Goff was the owner of a small stock of merchandise and sold it to Henry Goff & Co. and at the time he did so it was not worth a sum exceeding $4,000; Johnson paid for the stock issued to him, $1,100, by surrendering to Henry Goff a debt of this amount that Henry Goff owed him and by executing a note for $1,500 to Goff for the balance of the consideration; Henry Goff did not pay the corporation anything for the stock issued to him; and the 26 shares of stock issued to Grace Goff were issued without consideration. He charged that at the time the merchandise was turned over to the corporation by Henry Goff, he owed divers creditors for the merchandise, and it was turned over without notice to the creditors and in violation of the Bulk Sale Law, section 2651a-1 et seq., Kentucky Statutes.

Johnson and Grace Goff are not parties to this action. The petition prays judgment only against Henry Goff. Goff's defenses are a traverse and a statement setting forth how and the manner in which the stock in

the corporation was paid for by merchandise and labor. On the evidence introduced by the parties, the court entered a judgment against Henry Goff for $900 with interest from the 4th day of December, 1930, until paid, and dismissed the plaintiff's petition in so far as it sought to hold him liable for the stock issued to Grace Goff and Johnson. Goff prosecutes this appeal and Day has been granted a cross-appeal.

Section 193 of our Constitution and section 568, Kentucky Statutes, forbid the issuance of stock of a corporation "except for an equivalent in money paid or labor done, or property actually received * * * at a greater value than the market price at the time such labor was done or property delivered. * * *" Section 547, Kentucky Statutes, declares stockholders "shall be liable to creditors [of the corporation] for the full amount of the unpaid part of stock subscribed for by them, and no stockholder shall be liable because of being a stockholder, for any sum more than to the amount of the unpaid part of stock held by such stockholder." For our construction of these sections, see Stoecker et al. v. Goodman et al., 183 Ky. 330, 209 S. W. 374; Amick v. Elliott, 222 Ky. 753, 2 S. W. (2d) 367; Lewis v. Hatcher-Power Shoe Co., 233 Ky. 55, 24 S. W. (2d) 925; Rowan Co. Lbr. Co. v. Kautz, 246 Ky. 732, 56 S. W. (2d) 1. Their evident purpose is to have in the treasury of the corporation a full equivalent for the outstanding stock. Hess v. Trumbo, 84 S. W. 1153, 27 Ky. Law Rep. 320. The right of action under section 547 against a stockholder for the unpaid part of his stock subscription applies where, in violation of section 193 of the Constitution, stock is issued for less value than the face of the stock. Taylor v. Citizens' Oil Co., 182 Ky. 350, 206 S. W. 644.

Applying section 193 of the Constitution and sections 547 and 568, Kentucky Statutes, and our previous construction thereof, to the allegations of the petition and the developed facts, it is plain that Henry Goff is liable to the creditors of the corporation for the difference, if any, between the face value of stock issued to him and his interest in the market price of merchandise delivered to the corporation therefor.

Johnson and Goff testified as to the value of the merchandise and its inventory. Their testimony is uncontradicted, except inferentially by a report of the

auditor who made an audit of the affairs of the corporation at the request of the assignee, Day, after the deed of assignment was executed and delivered to, and accepted by, him.

According to the testimony of Goff and Johnson, the corporation received for the 19 shares of stock issued to Henry Goff, the one-third of $5,776.13, the inventory price, at 65 per cent. of the cost price, of the merchandise. They unequivocally declare there were no debts against the merchandise or the firm owning it at the time Johnson acquired one-third interest therein, or if there were any, Henry Goff, individually, assumed the payment thereof. It is not satisfactorily shown that the 9 shares of stock later issued and delivered to Henry Goff were paid for by ''an equivalent'' in money paid to, or labor performed for, or property actually received by, the corporation. Therefore, the court correctly decreed Henry Goff was liable for the 9 shares at the par value of $100 per share.

Day's proof shows the market value of the merchandise at the time it was delivered to the corporation, as it appeared on the books of the corporation, was $4,000. Only 40 shares of the stock was issued as of that date, 20 to Henry Goff and the remainder to Grace Goff and Johnson—one to the former and 19 to the latter. According to Day's presentation of the case, Henry Goff's one-half interest in the merchandise, which it is conceded he owned at that time, paid for the 20 shares issued and delivered to him on a valuation of merchandise at $4,000. Day complains that in so delivering the merchandise to the corporation, Goff & Co. disregarded the Bulk Sale Law, section 2651a-1 et seq. Since this is not an action under the Bulk Sale Law, we are unable to conceive, though it be conceded Goff & Co. were indebted to numerous creditors for merchandise at the time of the delivery thereof to the corporation, that Day's right to recover herein of Goff for the unpaid portion of the stock issued to him is in any way augmented by reason of the firm's disregard of the Bulk Sale Law.

Day insists that Goff failed to allege in his answer that the stock of merchandise delivered to the corporation was of the market value of $5,776.13, the price at which he claims it was delivered to the corporation and for which stock was issued to the three stockholders.

The parties, their counsel, and the trial court treated the allegations of the answer sufficient in this respect and determined the issues thus raised on the evidence of the parties. Having done so, the objection here presented to their sufficiency of the allegations of the answer must be considered as waived.

True it is, Goff and Johnson testify that the stockholders of the corporation, acting in lieu of a board of directors, agreed with Henry Goff to pay him a salary of $75 per month and that he devoted one-half of his time to the services for the corporation. In neither the answer nor in their testimony do they describe the services rendered by Henry Goff or state a value thereof. The evidence fails to show the corporation received any benefit, direct or indirect, from his services. We concur in the finding of the trial court that he had not paid for the 9 shares and therefore was liable therefor.

Day earnestly insists the testimony of the auditor alone should be considered, and that from the mere fact Henry Goff as president of the corporation consented to the issuance of the stock to Johnson and Grace Goff and signed the same as president, he is liable for the value of the stock subscribed and unpaid for by them. In the absence of an allegation of fraud or collusion, clearly proven, he is not liable to the creditors of the corporation for any sum in excess of the amount of the unpaid stock subscribed for, and actually issued to him. Horton v. Sherrill-Russell Lbr. Co., 147 Ky. 226, 143 S. W. 1053.

Wherefore, the judgment is affirmed on both the original and cross appeal.